997 So.2d 472 (2008)
M.M., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D08-562.
District Court of Appeal of Florida, Fifth District.
December 12, 2008.
*473 Wallace R. Rozefort, Law Offices of Wallace R. Rozefort, P.A., Orlando, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and L. Charlene Matthews, Assistant Attorney General, Daytona Beach, for Appellee.
COHEN, J.
M.M. was arrested and charged with resisting an officer without violence, disorderly conduct, and disruption of a school function. Following trial, M.M. was found guilty of resisting an officer without violence and disruption of a school function, but not guilty of disorderly conduct. After preparing a pre-disposition report, the court withheld adjudication of guilt and placed M.M. on community control. This appeal followed.
Only two issues raised by M.M. merit discussion. M.M. claims that he cannot be found to have violated section 877.13, Florida Statutes (2007), because his conduct, which resulted in the disruption of bus transportation, occurred after school. In relevant part, section 877.13 provides:
(1) It is unlawful for any person:
(a) knowingly to disrupt or interfere with the lawful administration or functions of any educational institution, school board, or activity on school board property in this state.
The fact that M.M.'s actions occurred after classes formally ended is not dispositive. That argument was addressed and rejected in A.C. v. State, 479 So.2d 297 (Fla. 3d DCA 1985). A.C. involved a fight between non-students and students, while the students were waiting for a school bus to take them home. The court found that the safe transportation of students to and from school was integral to the administration of an educational institution. We agree. The functions of an educational institution inherently extend beyond the classroom.
M.M.'s reliance upon A.M.P. v. State, 927 So.2d 97 (Fla. 5th DCA 2006), is likewise *474 misplaced. A.M.P. involved a fight in a high school bathroom where the evidence established there was no disruption to the remainder of the school but, rather, was limited to a fight between two students. A.M.P. should not be read to require disruption of classes to constitute a violation of section 877.13. The plain reading of the statute counsels against such a narrow interpretation.
M.M. asserts that the evidence failed to establish that he had a specific intent to disrupt or interfere with school functions. However, intent is an issue for the trier of fact. See State v. Gee, 624 So.2d 284, 285 (Fla. 2d DCA 1993). In this case, the evidence showed that M.M. knew there were other students on the bus as it prepared to leave and that by leaving the bus he disrupted its schedule, as well as the schedule of other buses. That is sufficient to establish a violation of section 877.13. See T.J. v. State, 867 So.2d 1238 (Fla. 5th DCA 2004) (student's refusal to calm down, despite repeated warnings, which interfered with community assistant's ability to assist other students, was a violation of section 877.13); T.T. v. State, 865 So.2d 674 (Fla. 4th DCA 2004) (student's refusal to leave with an officer that disrupted a high school awards ceremony violated section 877.13); J.J. v. State, 944 So.2d 518 (Fla. 4th DCA 2006) (inciting female students to fight, despite repeated requests to stop, that resulted in cafeteria getting louder, crowd forming around a table, and disruption of breakfast service, violated section 877.13).
AFFIRMED.
PALMER, C.J., concurs.
GRIFFIN, J., dissents, with opinion.
GRIFFIN, J., dissenting.
M.M. is a mentally ill child. Along with his two siblings, he was removed from his birth mother's care as a toddler because of her drug use and mental illness. The children were adopted by their foster parents, but they divorced and their adoptive mother got custody until it was discovered that she was abusing him. The children went into an unsuccessful foster placement, where M.M. was Baker-Acted five times before the adoptive father finally regained custody of the children. By all accounts, the father is doing a good job managing the special needs of all three children and has become knowledgeable about the techniques available for handling his children's mental health issues. M.M. suffers from bipolar disorder, attention deficit disorder, oppositional defiant disorder and reactive attachment disorder. One of the principal devices M.M., his family and his teachers have been taught is to de-escalate and defuseto separate from a situation that is likely to trigger inappropriate behavior on his part. On the day of this incident, M.M. was assigned, along with five other students, to ride the bus for handicapped students.
This is how the State of Florida describes the conduct that resulted in his finding of guilt of the criminal misdemeanor offense of "Disruption of Educational Institutions or School Boards":
In this case, Appellant's actions on the bus clearly disrupted or interfered with the lawful administration or functions of the school. Appellant was assigned a specific seat on his bus because of disciplinary problems, and Dean Christensen rightfully sought Appellant's compliance to move to his assigned seat. When asked by Dean Christensen to move to his assigned seat, Appellant looked directly at Dean Christensen and refused to do so. Dean Christensen was forced to call the student resource officer for assistance and, only to avoid an encounter with law enforcement did Appellant *475 comply and move to his assigned seat. Next, when Dean Christensen attempted to inform Appellant that his father must accompany him the next day, Appellant ignored Dean Christensen, kept his earphones on, and sang loudly. Dean Christensen moved closer to Appellant and again told him that he was not to report to school unless accompanied by his father. Appellant continued to sing profane lyrics and ignored Dean Christensen. Dean Christensen then called the student resource office and other school administrators for assistance. Appellant knew that Dean Christensen was trying to communicate with him and thus knowingly impeded Dean Christensen's attempt to inform him not to report to school the next day unless accompanied by his father. He then improperly left the bus, forcing Dean Christensen to follow him. Further, Appellant knew he was not alone on that bus and thus knowingly impeded the departure of the four other children on the bus for 15 to 20 minutes. Finally Appellant impeded the departure of eight buses that were lined up behind Appellant's bus because, instead of exiting forward, each bus had to back up and go around the stopped bus. All were ongoing school activities.
It may be true that the question of intent is a question of fact for the finder of fact, but it has to be based on some evidence. Here there is no evidence of any intent on the part of this child to disrupt a school function. The only delay was to the departure of the buses; yet there is no suggestion that he knew the buses would be delayed or that the buses should have been delayed. As we observed in A.M.P. v. State, 927 So.2d 97, 100 (Fla. 5th DCA 2006), this statute can be misused to convert any act of misconduct by any child on school property into a crime. This statute seeks to prohibit acts specifically and intentionally designed to stop or impede the progress of a normal school function. M.C. v. State, 695 So.2d 477 (Fla. 3d DCA 1997). The fact that we are reduced to contorting a statute that is not designed to criminalize the garden-variety misbehavior of a child, much less a mentally ill child, in order to assert control says more about us than it does about the child.